IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

SCHULTZ FAMILY FARMS LLC, et al,

        Plaintiffs,

   v.

JACKSON COUNTY,

        Defendant,

   v.

CHRISTOPHER HARDY, et al,

        Intervenor-defendants.

Case No. 1:14-cv-01975

**ORDER**

---

CLARKE, Magistrate Judge.

    This matter comes before the Court on cross motions for partial summary judgment filed by Schultz Family Farms, LLC, James Frink, Marilyn Frink, and Frink Family Trust (collectively, "Plaintiffs") (#46), defendant Jackson County ("the County") (#47), and intervenor defendants Christopher Hardy, Oshala Farm, Our Family Farms Coalition (OFFC), and the Center For Food Safety (CFS), (collectively, "intervenors") (#57). For the reasons discussed below, the County's motion and the intervenors' motion are GRANTED and the Plaintiffs'

Page 1 – ORDER

motion is DENIED. Defendants are entitled to summary judgment on Plaintiffs' first claim for relief.

## BACKGROUND

Plaintiffs originally filed this action in the Circuit Court for the State of Oregon for the County of Jackson on November 18, 2014. On December 10, Defendant Jackson County removed the action to federal court based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a). Plaintiffs' action challenges Proposed Jackson County Ordinance 635, which voters approved as ballot measure 15-119 on May 20, 2014, to ban the growing of genetically engineered plants in Jackson County. The ordinance is set to go into effect in June 5, 2015.

Plaintiffs Shultz Family Farms LLC, James Frink and Marilyn Frink, and Frink Family Trust are Oregon farmers who currently reside in Jackson County, Oregon. They have all previously grown and have currently planted crops of Roundup Ready® Alfalfa (RRA), which is grown from genetically engineered seeds. Plaintiffs claim that Ordinance 635 conflicts with Oregon's Right to Farm Act, ORS § 30.930-947, and that it will require plaintiffs to destroy valuable crops they have already planted, cultivated, and planned to sell, without just compensation, in violation of the Oregon and United States Constitution. Plaintiffs seek declaratory relief and injunctive relief to permanently enjoin enforcement of the ordinance. Alternatively, plaintiffs seek damages as compensation for the destruction of their property as a result of the ordinance.

Defendant Jackson County claims the ordinance was passed in compliance with the Right to Farm Act, and additionally claims that Oregon's Senate Bill 863, recently signed into law, regulates the use of agricultural seeds and agricultural seed products (crops) and is a clear

indication that the Oregon Legislature meant to allow Jackson County to pass the ordinance at issue in this case.

Intervenors Christopher Hardy and Oshala Farms are Oregon farmers who currently reside in Jackson County and grow traditional (non-genetically engineered) crops. Intervenors OFFC and CFS are public interest groups who similarly represent local Oregon farmers, as well as other supporters of Ordinance 635. Intervenors claim that Ordinance 635 was passed in order to protect their farms and crops from transgenic contamination from crops of genetically engineered plants. Intervenors allege that their local customers will not purchase seeds or plants that have been contaminated with genetically engineered pollen because consumers do not want to eat genetically engineered foods and crops. Additionally, intervenors claim that once transgenic contamination occurs, it becomes difficult if not impossible to contain it, thereby causing irreparable damage to their crops.

## SUMMARY

This case, and the issue of genetically engineered plants in general, involves a number of competing interests, as well as important considerations about basic questions fundamental to our everyday lives. Where does our food come from? What is our food made of? What are the long term effects of consuming genetically engineered food products? What are the long term impacts on global food scarcity if GE crops are banned? The Court's decision today, however, does not attempt to answer any of these complex and difficult questions. Today's decision is simply about the statutory construction of the Right to Farm Act, Jackson County Ordinance 635, and Oregon Senate Bill 863. Ultimately, the Court has determined that the Ordinance is not preempted by the Right to Farm Act, and it is specifically authorized by SB 863. Therefore the defendants are entitled to summary judgment on Plaintiff's first claim.

## DISCUSSION

Plaintiffs bring claims seeking to overturn Jackson County Ordinance 635. All parties have moved for summary judgment on the Plaintiff's first claim, which includes two requests for relief. Plaintiffs ask the Court to enter an order "(1) [d]eclaring the Ordinance invalid, unlawful, and null and void; and (2) [g]ranting preliminary and permanent injunctive relief to enjoin the County from taking any action to enforce the Ordinance." Compl. 22 (#1-1).

Plaintiffs' motion for partial summary judgment is based on the assertion that the Ordinance is invalid based on Oregon's Right to Farm Act. Or. Rev. Stat. §§ 30.930, et al. The defendants, by contrast, assert that they are entitled to summary judgment on this claim because (1) the Ordinance is valid under the Right to Farm Act, and (2) the Ordinance is specifically authorized by another, more recent, Oregon law, Senate Bill 863. The Court agrees with the defendants.

## I.  Oregon Rules of Statutory Construction

A federal court interpreting Oregon law should "interpret the law as would the [Oregon] Supreme Court." Powell's Books, Inc. v. Kroger, 622 F.3d 1202, 1209 (9th Cir. 2010) (alteration in original). Therefore, the court applies the framework for statutory interpretation established in PGE v. Bureau of Labor and Industries, 317 Or. 606, 859 P.2d 1143 (1993), and subsequently modified by State v. Gaines, 346 Or. 160, 206 P.3d 1042 (2009). See Sundermier v. State ex rel. Pub. Employees Ret. Sys., 269 Or. App. 586, 595, 344 P.3d 1142, 1147 (2015). Under that framework, the goal of statutory interpretation is to discern the intent of the legislature that enacted the statute. Gaines, 346 Or. at 171, 206 P.3d 1042. The most persuasive evidence for determining the legislature's intent is the "text and context" of the statute itself. Id. A statutory term's "context" includes both its immediate context—the "phrase or sentence in which the term

appears"—and the "broader context," which includes other statutes "on the same subject." State v. Stamper, 197 Or.App. 413, 417–18, 106 P.3d 172, rev. den., 339 Or. 230, 119 P.3d 790 (2005).

Statements of statutory policy are also considered useful context for interpreting a statute. Providence Health System v. Walker, 252 Or.App. 489, 500, 289 P.3d 256 (2012), rev. den., 353 Or. 867, 306 P.3d 639 (2013). Such statements, however, "should not provide an excuse for delineating specific policies not articulated in the statutes[.]" Warburton v. Harney County, 174 Or.App. 322, 329, 25 P.3d 978, rev. den., 332 Or. 559, 34 P.3d 1177 (2001). After consulting a statute's text and context, we consider any "pertinent legislative history." Gaines, 346 Or. at 177, 206 P.3d 1042. Finally, and only if the legislature's intent remains unclear, we will "resort to general maxims of statutory construction." Id. at 172, 206 P.3d 1042.

## II. The Ordinance is valid under Oregon's Right to Farm Act

Oregon's Right to Farm Act provides:

> Any local government or special district ordinance or regulation now in effect or subsequently adopted that makes a farm practice a nuisance or trespass or provides for its abatement as a nuisance or trespass is invalid with respect to that farm practice for which no action or claim is allowed under ORS 30.936 or 30.937.

Or. Rev. Stat. § 30.935. Sections 30.936 and 30.937 disallow private right of actions and claims for relief based on nuisance or trespass for "farming or forest practice(s) on lands zoned for farm or forest," and "farming or forest practice(s) allowed as a preexisting nonconforming use." Both sections include exceptions for (a) damage to commercial agriculture products, and (b) death or serious physical injury. Or. Rev. Stat. §§ 30.936(2)(a)-(b), 30.937(2)(a)-(b).

As used in ORS 30.930 to 30.947, a "farming practice" means a "mode of operation on a farm" that:

1. Is or may be used on a farm of a similar nature;
2. Is a generally accepted, reasonable and prudent method for the operation of the farm to obtain a profit in money;
3. Is or may become a generally accepted, reasonable and prudent method in conjunction with farm use;
4. Complies with applicable laws; and
5. Is done in a reasonable and prudent manner.

Or. Rev. Stat. § 30.930(2). A "'nuisance' or 'trespass' includes but is not limited to actions or claims based on noise, vibration, odors, smoke, dust, mist from irrigation, use of pesticides and use of crop production substances." Or. Rev. Stat. § 30.932.

Additionally, the Right to Farm Act provides a statement of the legislative findings and policies that lead to its enactment:

1. The Legislative Assembly finds that:
    a. Farming and forest practices are critical to the economic welfare of this state.
    b. The expansion of residential and urban uses on and near lands zoned or used for agriculture or production of forest products may give rise to conflicts between resource and nonresource activities.
    c. In the interest of the continued welfare of the state, farming and forest practices must be protected from legal actions that may be intended to limit, or have the effect of limiting, farming and forest practices.
2. The Legislative Assembly declares that it is the policy of this state that:
    a. Farming practices on lands zoned for farm use must be protected.
    b. Forest practices on lands zoned for the production of forest products must be protected.
    c. Persons who locate on or near an area zoned for farm or forest use must accept the conditions commonly associated with living in that particular setting.
    d. Certain private rights of action and the authority of local governments and special districts to declare farming and forest practices to be nuisances or trespass must be limited because such claims for relief and local government ordinances are inconsistent with land use policies, including policies set forth in ORS 215.243, and have adverse effects on the continuation of farming and forest practices and the full use of the resource base of this state.

Or. Rev. Stat. § 30.933.

The text and the context of the Right to Farm Act very clearly demonstrate that the legislature meant to protect farms and farming practices from urban encroachment. The language of the statute plainly states that the legislature intended to protect farming practices, which are "critical to the economic welfare of the state," from "the expansion of residential and urban uses" of such land. "Persons who locate on or near an area zoned for farm or forest use must accept the conditions commonly associated with living in that particular setting." Or. Rev. Stat. § 30.933(2)(d). In other words, in the conflicts that arise between active, functioning farms and new, neighboring suburbanites, who inevitably find the farming practices loud, smelly, invasive, or simply irritating, the Oregon legislature has decided, as have many states, to tip the scales in favor of the farms.

These intentions and policy considerations are further supported by the exception provided by the legislature for both private claims and ordinances based on farming practices that cause "damage to commercial agriculture." The exception demonstrates that the Right to Farm Act does not give free license to use *any* farming practices. While farming practices may not be limited by a suburbanite's sensitivities, they may be limited if they cause damage to another farm's crops.

With this understanding of the text and context of the Right to Farm Act, we turn to the Ordinance in question to determine its validity under the Act. Under Jackson County Ordinance 635, it is a "violation for any person or entity to propagate, cultivate, raise, or grow genetically engineered plants within Jackson County." Jackson County Code ("JCC") 635.04. "Genetically engineered" is defined, in part, as the "modification of living plants and organisms by genetic engineering, altering or amending DNA using recombinant DNA technology such as gene

deletion, gene doubling, introducing a foreign gene, or changing the position of genes, and includes cell fusion." JCC 635.03. Section 2 of the Ordinance states the "findings" and gives the primary purposes of the Ordinance, one of which is to protect local farmers from "significant economic harm to organic farmers and to other farmers who choose to grow non-genetically engineered crops" that can be caused by "genetic drift" from GE crops. JCC 635.02(c).

Based on the text and context of the Right to Farm Act and Ordinance 635, the Court finds that the Ordinance intends to protect against damage to commercial agriculture products, and therefore it falls into the exception to the Right to Farm Act. For this reason, the Ordinance is valid on its face.

Plaintiffs assert that the exception for damage to commercial agriculture products is not available without a showing of "actionable damage," and they claim that the Ordinance is invalid because it applies to all GE farming, without requiring such a showing or evidence of actual damage.[1] The Court disagrees. Farmers have always been able to bring claims against other farmers for practices that cause actionable damage to their commercial agriculture products under sections 30.936 and 30.937 of the Right to Farm Act. The Ordinance, by contrast, is enacted pursuant to section 30.935, and serves to prevent such damage before it happens. There is nothing in the text or context of the Right to Farm Act to indicate that a showing of actionable damage is necessary before the enactment of an ordinance, and the Court declines to create such a requirement.

### III. The Ordinance is specifically authorized by Senate Bill 863

---

[1] Plaintiffs also claim that use of GE seeds and crops is considered a "farming practice" under the Right to Farm Act, and therefore Ordinance 635 is invalid because it "provides for the abatement" of such farming practice, and effectually makes it a nuisance under the laws of Jackson County. Because the Court finds the Ordinance falls into the exception for damage to commercial agriculture, the Court declines to address whether the use of GE seeds is a "farming practice" under the Right to Farm Act.

Page 8 – ORDER

During the 2013 First Special Session, the Oregon Legislature enacted legislation specifically related to local government ordinances, or other regulations, that would inhibit or prevent the production or use of various types of agricultural seed and seed products. This legislation was enacted as Senate Bill 863 ("SB 863" or "Seed Bill"), and codified in part as ORS 633.733 and ORS 633.738.

ORS 633.738 provides, in pertinent part, that:

> [A] local government may not enact or enforce a local law or measure, including but not limited to an ordinance, regulation, control area or quarantine, to inhibit or prevent the production or use of agricultural seed, flower seed, nursery seed or vegetable seed or products of agricultural seed, flower seed, nursery seed or vegetable seed. The prohibition imposed by this subsection includes, but is not limited to, any local laws or measures for regulating the display, distribution, growing, harvesting, labeling, marketing, mixing, notification of use, planting, possession, processing, registration, storage, transportation or use of agricultural seed, flower seed, nursery seed or vegetable seed or products of agricultural seed, flower seed, nursery seed or vegetable seed.

Or. Rev. Stat. § 633.738(2). In the uncodified portion of SB 863, specifically Section 4, additional legislation was enacted to permit certain local government prohibitions on the production or use of various types of seed. Section 4 provides that ORS 633.738 "does not apply to any local measure that was: (1) Proposed by initiative petition and, on or before January 21, 2013, qualified for placement on the ballot in a county; and (2) Approved by the electors of the county at an election held on May 20, 2014." It is undisputed that the exception in Section 4 applies to Jackson County Ordinance 635.

The legislative history shows that lawmakers specifically intended to allow the Jackson County Ordinance to go forward, even though the purpose of the Seed Bill was to prevent counties and local governments from enacting precisely such laws. At the Senate Committee on

Page 9 – ORDER

Rural Communities and Economic Development meeting held on March 12, 2013, the committee heard testimony from two state legislators representing Jackson County. County Ex. 9 (#51-9). Senator Alan Bates testified about the unique geography of Jackson County and the Rogue River Valley, and the impact of that geography on the farming community. Id. Representative Peter Buckley testified about the growing number of organic farmers in Jackson County, and the importance of protecting their crops from potential harm caused by pollen drift from farms growing genetically engineered crops. Id. Later, during the Joint Interim Committee on Special Session meeting held on September 26, 2013, then-Governor John Kitzhaber testified that the intent of the Seed Bill was to "preempt counties from adopting their own ban on genetically engineered products *with the exception of the election in Jackson County that's already on the ballot*." County Ex. 8 (#51-8) (emphasis added). At the same meeting, Speaker of the House Tina Kotek confirmed that the intent was for "the Jackson County ballot that has been approved and cleared for the May 2014 ballot to continue to go through." Id.

It is clear from the text and context of the Seed Bill that the Oregon legislature meant to preempt counties and other local governments from enacting laws banning the use of GE seeds so that the GMO issue could be addressed on a state-wide, uniform basis. In other words, the Seed Bill preempts laws precisely like the Ordinance. However, it is equally clear that the legislature meant to carve out a specific exception authorizing Jackson County Ordinance 635.

IV.   **Intervenors' Motion to Strike is Denied**

Intervenor defendants move to strike portions of four declarations filed by Plaintiffs in support of their motion for summary judgment, or alternatively to lodge the intervenors' objections to the same. Because the Court did not rely on the declarations in its summary

judgment decision, the motion is denied as moot. The objections are therefore lodged, as requested.

## ORDER

Jackson County Ordinance is valid under the Right to Farm Act, and it is specifically authorized by Oregon law. The motions for partial summary judgment by the County (#47) and the intervenors (#57) are therefore are GRANTED. Plaintiffs' motion (#46) is DENIED. Intervenors' motion to strike (#82) is DENIED. The Court notes the objections made by the intervenors to the declarations submitted by the plaintiffs.

IT IS SO ORDERED and DATED this 29 day of May, 2015.

_____
MARK D. CLARKE
United States Magistrate Judge